IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

MAR-BOW VALUE PARTNERS, LLC,
　　　Appellant,

　　　　　v.　　　　　　　　　　　　　　　　　Civil No. 3:19cv552 (DJN)

MCKINSEY RECOVERY & TRANSFORMATION
SERVICES U.S., LLC, *et al.*,
　　　Appellees.

## MEMORANDUM OPINION

This matter comes before the Court on Appellant Mar-Bow Value Partners, LLC's

("Mar-Bow") appeal from several orders of the United States Bankruptcy Court for the Eastern

District of Virginia (the "Bankruptcy Court"). (ECF No. 1.) The orders from which Mar-Bow

seeks relief through its Rule 60(d) Motion have little to do with the merits of the bankruptcy

action itself and more to do with Mar-Bow's objections to the required disclosures of its

competitor, McKinsey Recovery & Transformation Services U.S., LLC ("McKinsey").[1] Before

Mar-Bow filed the instant Rule 60(d) Motion, the Bankruptcy Court had previously rejected

Mar-Bow's objections, this Court had dismissed Mar-Bow's appeals of the Bankruptcy Court's

rejections for lack of bankruptcy appellate standing, the Fourth Circuit affirmed this Court's

dismissal of those appeals, and the United States Supreme Court denied certiorari.  Undeterred,

---

[1]　　　Specifically, Mar-Bow appeals from the Bankruptcy Court's Memorandum Opinion and Order (App. 133-47) denying Mar-Bow's Amended Motion for Relief from Judgments and for Indicative Ruling (the "Rule 60(d) Motion"), Bankruptcy Case No. 15-33896 ("Bankr. Case"), ECF No. 4128, (App. 3298))), the Bankruptcy Court's Memorandum Opinion and Order (App. 1234-39) denying Mar-Bow's Motion for Reconsideration (Bankruptcy Case No. 19-00302 ("Misc. Bankr. Action"), ECF No. 66, (App. 547-72)) of the denial of the Rule 60(d) Motion, and the Bankruptcy Court's Order ((Misc. Bankr. Action ECF No. 83 (App. 1240-43)) accepting the certifications of McKinsey.

Mar-Bow asked the Bankruptcy Court to revisit those decisions in its Rule 60(d) Motion.  The

Bankruptcy Court denied Mar-Bow's Rule 60(d) Motion for lack of standing, and Mar-Bow has

filed the instant appeal.  However, a party must qualify as a "person aggrieved" to appeal a

bankruptcy order, meaning that it has a pecuniary interest in the outcome of the appeal.  But, like

Mar-Bow's previous appeals, Mar-Bow has no pecuniary interest in the outcome of this appeal

and, therefore, lacks bankruptcy appellate standing.  Accordingly, Mar-Bow's appeal will be

dismissed.

## I.   BACKGROUND

This appeal arises out of a chapter 11 bankruptcy, but the underlying disputes stem from

Mar-Bow's objections to McKinsey's compliance with Federal Rule of Bankruptcy Procedure

2014.  Federal Rule of Bankruptcy Procedure 2014(a) requires that any application for

employment of professionals:

> be accompanied by a verified statement of the person to be employed setting forth
> the person's connections with the debtor, creditors, any other party in interest,
> their respective attorneys and accountants, the United States trustee, or any person
> employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

From the time that it bought its way into the bankruptcy proceedings, Mar-Bow has

objected strenuously to McKinsey's Rule 2014 disclosures.  The parties have litigated Mar-

Bow's objections in various procedural postures.  Accordingly, the Court need not provide

substantial detail regarding the parties and the underlying bankruptcy case.  However, the history

with respect to the litigation of Mar-Bow's objections — and the arguments raised and rejected

at each stage — warrants a more detailed review.

2

## A.     The Relevant Parties

On August 3, 2015, Alpha Natural Resources, Inc. ("ANR") and 149 direct and indirect subsidiaries (collectively, the "Debtors") each filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court, which the Bankruptcy Court consolidated into the Bankruptcy Case. (App. 133-34.) The Debtors operate as one of the largest suppliers of coal in the United States. The Debtors sought and obtained approval to obtain McKinsey as their turnaround advisor. (App. 134; (("Retention Order") (Bankr. ECF No. 476) at 2).) McKinsey advises struggling businesses on how to improve their profitability and helps businesses implement the changes that it suggests. No party timely objected to the employment of McKinsey and the Retention Order, entered on September 17, 2015, became a final order. (App. 134.)

Jay Alix beneficially owns and funds Mar-Bow. (App. 134.) Jay Alix also founded AlixPartners, a worldwide consulting firm that competes with McKinsey in the turnaround consulting business. (*Id.*) Mar-Bow has similarly purchased claims in other bankruptcy proceedings and objected to McKinsey's disclosures.[2] On March 23, 2016, Mar-Bow entered the Bankruptcy Case by filing a proof of claim in the amount of "$1.25 million of ANR 7.5% second lien notes, due August 1, 2020." (App. 134.) Upon purchasing the debt, Mar-Bow held 0.025% of the Debtors' pre-petition debt. (App. 146.)

## B.     The Underlying Bankruptcy Case

On August 3, 2015, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which allows for reorganization of a bankruptcy estate. (App. 133-34.) For

---

[2]     *See In re Westmoreland Coal Co.*, Case No. 18-35672 (Bankr. S.D. Tex.); *In re SunEdison, Inc.*, Case No. 16-10992 (Bankr. S.D.N.Y.).

procedural purposes only, the Bankruptcy Court consolidated all of the petitions into a single chapter 11 bankruptcy action. (*Id.*)

On August 25, 2015, the Debtors filed an application requesting permission to employ McKinsey "as their turnaround advisor . . . to assist the Debtors with the development and refinement of their strategic business plan." (the "Retention Application" (App. 1244).) As turnaround advisor, McKinsey served to help the Debtors save money and become more profitable, which would increase the bankruptcy estate and the recovery for the Debtors' creditors. (App. 1246.) The Debtors attached to their Retention Application an Amended and Restated Agreement (the "Engagement Letter" (App. 1262)), detailing the proposed terms of McKinsey's employment as turnaround advisor and the proposed fee arrangement. The Debtors requested approval of McKinsey's employment as of August 3, 2015 (the date that the Debtors filed for bankruptcy), because McKinsey began working with the Debtors on June 29, 2015, before the Debtors filed for bankruptcy. (App. 1244-61.)

The Debtors attached the first set of McKinsey's Rule 2014 disclosures to the Retention Application, including a "Disclosure Regarding Disinterestedness." (App. 1282-90.) The disclosure explained the process McKinsey used to identify any connections it had with the Debtors, the United States Trustee and the Bankruptcy Court, and any parties on the interested parties list (the "Interested Parties"). (*Id.*) It also outlined McKinsey's connections with the Interested Parties. (*Id.*)

No party opposed the Retention Application. (App. 134.) After reviewing McKinsey's Rule 2014 disclosures, the Bankruptcy Court found that McKinsey qualified as "a 'disinterested person' as such term is defined under section 101(14) of the Bankruptcy Code." (Retention Order at 2.) On September 17, 2015, the Bankruptcy Court granted the Retention Application

4

and authorized the Debtors to retain McKinsey as turnaround advisor on the terms in the

Engagement Letter. (*Id.*) On November 9, 2015 and March 25, 2016, before any objections had

been lodged to its initial disclosures, McKinsey filed subsequent Rule 2014 disclosures to

provide additional information. *Mar-Bow Value Partners, LLC v. McKinsey Recovery &

Transformation Services US, LLC*, 578 B.R. 325, 333 (E.D. Va. Sep. 30, 2017) ("*Mar-Bow I*").

In these supplemental disclosures, McKinsey swore that it continued to monitor the Interested

Parties List against its own client records. (*Id.*)

On May 25, 2016, the Debtors filed the Second Amended Joint Plan of Reorganization of

Debtors and Debtors in Possession (the "Plan"). 578 B.R. at 339. On June 29, 2016, Mar-Bow

filed its objection to the Plan. (App. 2114). Specifically, Mar-Bow objected to the Plan based

on its contentions that McKinsey's disclosures did not comply with Rule 2014. (App. 2117.) It

also objected to the provisions of the Plan releasing McKinsey from liability for actions taken in

connection with the restructuring, "given that McKinsey has not disclosed all of its connections

as required by Rule 2014." (*Id.*) Mar-Bow did not object to the classification or treatment of its

own claim.

On July 7, 2016, the Bankruptcy Court held a four-and-a-half-hour long evidentiary

hearing on the Plan. (App. 2145-2381; 578 B.R. at 340.) During this hearing, the Bankruptcy

Court heard argument on Mar-Bow's objection to the Plan. (*Id.*) On July 12, 2016, following a

lengthy evidentiary hearing, the Bankruptcy Court entered an Order confirming the Plan. (App.

2382.) The Plan "incorporated a delicate balance of interrelated settlements involving numerous

parties." (App. 135.) All impaired creditor classes entitled to vote, including the class that

contained Mar-Bow's claim, universally accepted the Plan in accordance with section 1126(c) of

the Bankruptcy Code. (*Id.*) Under the Plan, Mar-Bow had the right to elect to have its Claim

classified in either Class 3 or Class 6B. (*Id.*) Mar-Bow declined to exercise its right to

participate in Class 3 and, as such, remained a Class 6B claimant. (*Id.*) As of confirmation,

Mar-Bow's recovery under the Plan became fixed. (*Id.*) To the extent that any excess cash

enters the bankruptcy estate in the future, the Plan provides for that money to be distributed to

the holders of "Allowed Secured First Lien Lender Claims." (*Id.*) In no event will Class 6B

claims be entitled to any such funds that enter the estate. (*Id.*) Indeed, each Class 6B claimant

has "received its full and final distribution in accordance with the Plan." (*Id.*) Consequently,

Mar-Bow's claim has been fully satisfied. (*Id.*)

On June 28, 2018, the Bankruptcy Court entered the order closing the Bankruptcy Case

after finding that the estates had been fully administered in accordance with the Plan. (App. 136-

37.)

### C.    Mar-Bow's Previous Appeals

Between the time that the Bankruptcy Court approved the Plan and the time that it closed

the Bankruptcy Case, Mar-Bow continued to object to McKinsey's Rule 2014 disclosures,

appealing numerous orders entered by the Bankruptcy Court. This Court dismissed those

appeals in two separate opinions, the Fourth Circuit summarily affirmed the dismissal of those

appeals, and the Supreme Court declined Mar-Bow's request to review the Fourth Circuit's

decision. Those objections and appeals bear on the instant appeal and, therefore, warrant the

thorough discussion below.

### i.    *Mar-Bow I*

On September 30, 2017, the Court issued its opinion in *Mar-Bow Value Partners, LLC v.*

*McKinsey Recovery & Transformation Services US, LLC*, 578 B.R. 325 (E.D. Va. Sept. 30,

2017) ("*Mar-Bow I*"), dismissing Mar-Bow's appeal of certain orders from the Bankruptcy

Court. Specifically, the opinion related to the appeals of six Bankruptcy Court rulings: (1) Order Compelling Compliance; (2) Clarification Order; (3) Confidentiality Order; (4) Order Confirming Reorganization Plan; (5) Stay Order; and, (6) Stay Opinion. 578 B.R. at 344. Because the instant appeal also relates to Mar-Bow's objections to the Order Compelling Compliance, the Clarification Order and the Confidentiality Order (collectively, the "Rule 2014 Objections"), the Court will discuss the background of those orders and the Court's previous dismissal of the appeal of those orders.[3]

### a.  Order Compelling Compliance

Following a motion to compel compliance with Rule 2014 filed by the U.S. Trustee on May 3, 2016, McKinsey agreed to file an additional declaration disclosing more information about its connections with Interested Parties. 578 B.R. at 333-34. On May 19, 2016, McKinsey filed its Third Supplemental Declaration that included more detailed information about its connection to Interested Parties. *Id.* at 333. McKinsey still omitted the names of at least three connections, which it identified as "confidential clients." *Id.* at 334-35. These clients had not agreed to the disclosure of their names. *Id.* The U.S. Trustee indicated that it believed that McKinsey's additional disclosures complied with Rule 2014. *Id.* at 335.

On June 6, 2016, dissatisfied with the resolution of McKinsey's disclosures, Mar-Bow filed a Motion to Compel McKinsey to Comply with Rule 2014. *Id.* Mar-Bow argued that McKinsey's disclosures did not provide sufficient specificity to allow the Bankruptcy Court to

---

[3]     In *Mar-Bow I*, the Court dismissed the appeals of the Order Confirming Reorganization Plan, Stay Order and Stay Opinion as equitably moot, finding that "it would be imprudent and inequitable to upset the Reorganization Plan at this date." 578 B.R. at 349. The basis of Mar-Bow's objections to those orders remained its objection to McKinsey's Rule 2014 disclosures. However, in the Rule 60(d) motion that gives rise to the instant appeal, Mar-Bow did not move for relief from those orders, so the Court will not go into detail regarding their history and the appeal of those orders.

evaluate McKinsey's disinterestedness. *Id.* Mar-Bow made sweeping policy arguments that the allegedly insufficient disclosures threatened both the bankruptcy system's ability to function and the integrity of the bankruptcy proceeding itself. *Id.*

Through the Motion to Compel, Mar-Bow sought an order from the Bankruptcy Court requiring McKinsey to submit significant additional disclosures and detail regarding McKinsey's connections to the interested parties in the case. *Id.* Mar-Bow further requested that the Bankruptcy Court suspend payment of McKinsey's fees, and to disgorge all of McKinsey's previously paid fees if it found that McKinsey failed to comply with the Bankruptcy Court's order. *Id.*

On June 28, 2016, the Bankruptcy Court held a hearing on the Motion to Compel, hearing lengthy argument from Mar-Bow, McKinsey, the U.S. Trustee and ANR. *Id.* at 336. Then, on July 1, 2016, the Bankruptcy Court entered the Order Compelling Compliance, granting Mar-Bow's Motion to Compel in certain respects. (*Id.*; App. 2139.) Specifically, the Bankruptcy Court ordered McKinsey to deliver to the Bankruptcy Court, for *in camera* review, certain information related to its connection to Interested Parties and its determination of connections to Interested Parties. *Id.* Mar-bow appealed the Order Compelling Compliance.

### b.   Clarification Order and Confidentiality Order

On July 5, 2016, Mar-Bow filed a Motion to Clarify the Bankruptcy Court's July 1 Order Compelling Compliance. *Id.* at 337. Mar-Bow argued that the Order Compelling Compliance "does not appear to allow Mar-Bow's professionals to review" the information, because it provided for *in camera* review of McKinsey's additional disclosures and only allowed the U.S. Trustee and professionals employed by the Debtors to review the information. *Id.* at 338.

8

On July 7, 2016, the Bankruptcy Court heard argument on Mar-Bow's Motion to Clarify. The Bankruptcy Court heard from Mar-Bow, McKinsey and the U.S. Trustee. *Id.* The Bankruptcy Court stated that it had reviewed McKinsey's *in camera* submissions and that it was "completely satisfied that there is not going to be any type of disinterested problem with McKinsey going forward" and that it was "very satisfied with the information" in McKinsey's *in camera* disclosure. *Id.* On July 15, 2016, the Bankruptcy Court entered the Clarification Order addressing Mar-Bow's Motion to Clarify. *Id.* The Bankruptcy Court ordered that the U.S. Trustee could file a "recommendation with the Court whether any further public disclosures should be made" within twenty-one days. *Id.* The Bankruptcy Court denied any further requests in Mar-Bow's Motion to Clarify. *Id.* Mar-Bow appealed the Clarification Order.

Also on that date, the Bankruptcy Court entered the Confidentiality Order that governed the "information submitted to the Bankruptcy Court for *in camera* review pursuant to the July 1 Order, relating to the disclosure of [McKinsey's] connections under Bankruptcy Rule 2014 and any further information McKinsey . . . provides to satisfy such requirements." *Id.* Mar-Bow appealed the Confidentiality Order.

On August 5, 2016, the U.S. Trustee filed a statement recommending that McKinsey make additional public disclosures, because "Rule 2014 does not define connections, and because transparency is critical to the integrity of the bankruptcy process." *Id.* at 339. The U.S. Trustee recommended certain additional disclosures and asserted that "[t]he disclosures made to date, with the additional disclosures recommended here, will satisfy Rule 2014." *Id.* That same day, McKinsey filed a declaration that "provided the disclosure" that the U.S. Trustee recommended. *Id.*

### c.    The Dismissal of the Appeal

The parties fully briefed the appeal.  McKinsey also filed a motion to dismiss Mar-Bow's

appeal of the Order Compelling Compliance, the Clarification Order, and the Confidentiality

Order for lack of standing.  McKinsey argued that Mar-Bow had no standing to appeal the Rule

2014 rulings, because Mar-Bow lacked the requisite financial interest in those rulings, meaning it

did not qualify as a "person aggrieved" such that it lacked bankruptcy appellate standing.  578

B.R. at 353.

In opposing the motion to dismiss, Mar-Bow did not argue that it had a pecuniary interest

in the orders that it had appealed, instead making sweeping policy arguments against the

application of the normal requirements for bankruptcy appellate standing.  (*MBI* Resp. Standing

Mot. Dismiss, Case No. 3:16cv612 (E.D. Va.) (ECF No. 43).)  Indeed, Mar-Bow admitted that

"[w]ether or not McKinsey complied with its disclosure obligations in the bankruptcy case (i.e.

the issue in this appeal) would provide no immediate financial benefit to Mar-Bow or any other

party."  (*Id.* at 1.)  Mar-Bow argued that other courts have "afforded[ed] appellate standing to

preserve the integrity of the bankruptcy system and vindicate the public interest."  (*Id.* at 8.)

Mar-Bow also argued that granting it standing would serve the public interest and preserve the

intrinsic fairness of the bankruptcy proceeding.  (*Id.* at 12-15.)  Finally, Mar-Bow argued that the

Bankruptcy Code necessarily afforded appellate standing to all creditors as "parties in interest."

(*Id.* at 16-18.)

In granting McKinsey's Motion to Dismiss, the Court rejected Mar-Bow's arguments and

held that the "person aggrieved" test for bankruptcy appellate standing applied.  *Mar-Bow I*, 578

B.R. at 353.  The Court noted that much of the ultimate relief sought by Mar-Bow — orders

from the Bankruptcy Court requiring McKinsey to make additional public disclosures — would

not "necessarily result in a pecuniary gain." *Id.* at 354.  Further, Mar-Bow did not "argue that

because McKinsey's Rule 2014 disclosures were allegedly insufficient, all of McKinsey's fees

*must* be disgorged and returned to the estate, nor could it." *Id.* (emphasis in original).

Importantly, the Court ruled that "Mar-Bow lost any pecuniary interest in the outcome of the

Rule 2014 Appeal on July 12, 2016, when the Reorganization Plan was confirmed." *Id.* at 355.

The Court gave its reasoning for finding that Mar-Bow had lost its pecuniary interest upon

confirmation of the Plan:

> When the Plan was finalized, the expected recovery for Mar-Bow's class of claim
> became fixed.  All additional cash will be distributed to the holders of "Allowed
> Secured First Lien Lender Claims," which does not include Mar-Bow.  Therefore,
> even if the Court were to grant Mar-Bow's requested relief by remanding the case
> to the Bankruptcy Court with all of Mar-Bow's proposed mandates, and even if
> the Bankruptcy Court sanctioned McKinsey by disgorging *all* of McKinsey's
> fees, those fees would return as cash to the Estate and be distributed to holders of
> "Allowed Secured First Lien Lender Claims."  Mar-Bow would receive no
> pecuniary benefit at all.

*Id.*  Therefore, the Court found that Mar-Bow lacked standing to appeal the Bankruptcy Court's

rulings and dismissed Mar-Bow's appeal.  Mar-Bow appealed the dismissal to the Fourth Circuit

(along with the Court's dismissal of the appeal in *Mar-Bow II*, discussed below), and the Fourth

Circuit affirmed this Court's dismissal.  *In re Alpha Nat. Res., Inc.*, 736 F. App'x 412, 413 (4th

Cir. 2018).

### ii.    *Mar-Bow II*

On September 30, 2017, on the same day that it issued *Mar-Bow I*, the Court issued an

opinion in *Mar-Bow Value Partners, LLC v. McKinsey Recovery Transformation Services US,*

*LLC*, 2020 WL 4414155 (E.D. Va. Sept. 30, 2017) (*Mar-Bow II*), dismissing Mar-Bow's appeals

of several other orders.  Specifically, the opinion related to the appeals of four Bankruptcy Court

rulings:  (1) Third Fee Application Order; (2) Final Fee Application Order; (3) Motion to

Dismiss Order; and, (4) Motion to Dismiss Memorandum Opinion. 2017 WL 4414155, at *15. Because the instant appeal implicates all four of these orders, the Court will discuss the background of those orders and the Court's previous dismissal of the appeal of those orders. These orders related to Mar-Bow's challenge to McKinsey's Rule 2014 disclosures in the context of McKinsey's applications for fees filed in the Bankruptcy Court.

### a.   McKinsey's Third Fee Application

On June 14, 2016, McKinsey filed its Third Fee Application for services rendered from February 1, 2016, through April 30, 2016 (the "Third Fee Application"). 2017 WL 4414155, at *13. On July 1, 2016, Mar-Bow objected to the Third Fee Application on the grounds of McKinsey's alleged Rule 2014 noncompliance (the "Third Fee Application Objection"). *Id.* Mar-Bow argued that "[w]ithout full and complete disclosure as required by Rule 2014, Mar-Bow is unable to determine whether the tasks performed or the fees sought are solely for the purpose of representing the Debtors and are in the best interest of the Estates." *Id.* McKinsey moved to dismiss Mar-Bow's objections on four grounds: (1) the Bankruptcy Court had already decided the issue of McKinsey's disinterestedness and entitlement to fees in ruling on Mar-Bow's Motion to Compel; (2) the Confirmation Order barred Mar-Bow from claiming that it may have received less than its fair entitlements for any reason, including McKinsey's Rule 2014 disclosures; (3) Mar-Bow lacked standing, because the Plan fixed Mar-Bow's recovery such that it had no pecuniary interest in the outcome of its objection; and, (4) Mar-Bow's earlier appeals prevented the Bankruptcy Court from ruling on the adequacy of McKinsey's disclosures in the context of the Third Fee Application. *Id.*

On September 18, 2016, the Bankruptcy Court held a hearing on McKinsey's Third Fee Application, including Mar-Bow's Objection and McKinsey's Motion to Dismiss that Objection.

During that hearing, Mar-Bow clarified that it sought "no relief other than sanctions against McKinsey." *Id.* at \*14. Mar-Bow asserted that the Bankruptcy Court should sanction McKinsey by, at a minimum, denying the Third Fee Application. *Id.* After hearing argument, the Bankruptcy Court granted McKinsey's Third Fee Application, reiterating its finding of disinterestedness. *Id.*

On September 23, 2016, the Bankruptcy Court entered an Order granting the Third Fee Application, overruling Mar-Bow's objection to the Third Fee Application and granting McKinsey's Motion to Dismiss Mar-Bow's Objection (the "Third Fee Application Order"). *Id.* Mar-Bow appealed the Third Fee Application Order that day.

### b.   McKinsey's Final Fee Application

On September 26, 2016, McKinsey filed its fourth and final fee application for services rendered from May 1 to July 26, 2016 (the "Final Fee Application"). *Id.* On October 26, 2016, Mar-Bow objected to the Final Fee Application, raising the same Rule 2014 disclosure arguments. *Id.* McKinsey again moved to dismiss, advancing the same arguments that it had against the previous objection, and further arguing that Mar-Bow had failed to establish entitlement to reconsideration of the Bankruptcy Court's previous decisions regarding McKinsey's Rule 2014 disclosures. *Id.*

On December 7, 2016, the Bankruptcy Court held a hearing on McKinsey's Final Fee Application. The parties focused their arguments on whether Mar-Bow had constitutional standing to object to McKinsey's Final Fee Application. *Id.* Mar-Bow continued to press the Bankruptcy Court to consider the merits of its objections regardless of any standing concerns. *Id.* The Court granted McKinsey's Motion to Dismiss from the bench, concluding that Mar-Bow

lacked constitutional standing, and that the Rule 2014 disclosures were before this Court on appeal. *Id.* at *15.

On December 20, 2016, the Bankruptcy Court entered an order granting McKinsey's Final Fee Application and dismissing Mar-Bow's objection to the Final Fee Application (the "Final Fee Application Order" (App. 2593)), an order granting McKinsey's Motion to Dismiss Mar-Bow's Final Fee Application objection (the "Motion to Dismiss Order" (App. 2587)), and a memorandum opinion explaining its reasons for dismissing Mar-Bow's objections (the "Motion to Dismiss Opinion" (App. 2577)). *Id.* In the Motion to Dismiss Opinion, the Bankruptcy Court held that Mar-Bow lacked constitutional standing "to raise the Objection, as Mar-Bow no longer has a pecuniary interest in the outcome of the Final Fee Application." *Id.* Because Mar-Bow's recovery became fixed upon confirmation of the Plan, Mar-Bow would reap no financial benefit from a denial of McKinsey's fees. *Id.* The Bankruptcy Court also concluded that it lacked subject matter jurisdiction, because the Bankruptcy Court's rulings on McKinsey's Rule 2014 disclosures had been taken up on appeal to this Court. *Id.* On December 29, 2016, Mar-Bow amended its appeal to include an appeal of the Final Fee Application Order, the Motion to Dismiss Order and the Motion to Dismiss Opinion. *Id.*

### c.    The Dismissal of the Appeal

As with *Mar-Bow I*, the parties fully briefed the appeal and McKinsey again moved to dismiss Mar-Bow's appeal for lack of appellate standing. *Id.* McKinsey argued that the confirmation of the Plan left Mar-Bow with no financial stake in any of the fee orders, meaning that Mar-Bow lacked the requisite pecuniary interest in the outcome of the appeal. *Id.* at *16. Therefore, Mar-Bow could not satisfy the person aggrieved test for bankruptcy appellate standing.  In opposing McKinsey's Motion to Dismiss, Mar-Bow largely argued the issue of

14

whether it had Article III standing, even conceding that "the 'pecuniary interest test is more stringent than the broader test for Article III standing under the Constitution, which does not require a showing of financial harm." (*MBII* Standing Resp. Mot. Dismiss, Case No. 3:16cv799 (E.D. Va.), ECF No. 42, at 7). Rather than pointing to any financial stake in the outcome, Mar-Bow again argued that it need not satisfy the pecuniary interest test to have appellate standing. Mar-Bow incorporated its arguments from *Mar-Bow I*, arguing that the pecuniary interest test did not apply to attempted vindications of the public interest, and that it enjoyed standing to appeal as a creditor regardless of its pecuniary interest. (*Id.* at 20.)

On September 30, 2017, the Court granted McKinsey's Motion to Dismiss and dismissed Mar-Bow's appeal for lack of appellate standing. *Mar-Bow II*, 2017 WL 4414155, at *17-18. The Court held Mar-Bow to the pecuniary interest test and found that it could not meet that standard. *Id.* As with *Mar-Bow I*, the Court found that "Mar-Bow lost any pecuniary interest in the approval of McKinsey's Fee Applications" when the Bankruptcy Court confirmed the Plan, because it fixed Mar-Bow's recovery. 2017 WL 4414155, at *18. With respect to the possibility that the potential disgorgement of McKinsey's fees could confer standing on Mar-Bow, the Court ruled that:

> even if the Court were to grant Mar-Bow's requested relief by remanding the case to the Bankruptcy Court with all of Mar-Bow's proposed mandates, and even if the Bankruptcy Court then sanctioned McKinsey by disgoring *all* of its fees, those fees would return as cash to the estate and be distributed to holders of "Allowed Secured First Lien Lender Claims." Mar-Bow would receive no pecuniary benefit at all.

*Id.* (emphasis in original). Because it lacked "any pecuniary interest in the outcome of [the] appeal," Mar-Bow did not qualify as a person aggrieved by the Bankruptcy Court's orders, leaving it without standing to appeal those orders. *Id.* The Court roundly rejected Mar-Bow's argument that the person aggrieved test should not apply:

> Mar-Bow urges this Court to decline to hold Mar-Bow to the standard usually
> applied to determine whether a party has standing to appeal a bankruptcy court
> decision. Mar-Bow, however, cites no persuasive authority for this Court to do
> so, and this Court sees no reason to shun the "person aggrieved standard,"
> designed in part to assure that bankruptcy litigation does not become "mired in
> endless appeals brought by the myriad of parties who are indirectly affected by
> every bankruptcy court order."

*Id.* (citing *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988)).

The Court also found that, if it applied Article III standing rather than person aggrieved

standing, Mar-Bow likely would lack standing, because it had "failed to establish a concrete,

particularized injury-in-fact that can be redressed by the relief it seeks from this Court." *Id.* The

Court found that Mar-Bow's alleged injury — lack of access to judicial records — would not be

redressed by the remedy that it sought. *Id.* at *19.

The Court granted McKinsey's Motion to Dismiss and dismissed Mar-Bow's appeals.

Mar-Bow appealed the Court's dismissal of the Fee Application Rulings.

### iii.    *Mar-Bow's Appeal to the Fourth Circuit*

On October 27, 2017, Mar-Bow filed notices of appeal of two of the orders from this

Court dismissing its appeals.[4] On October 30, 2017, the Fourth Circuit consolidated the two

appeals.

In its briefs to the Fourth Circuit, Mar-Bow again argued that it did not need to meet the

person aggrieved test to have standing to appeal the Bankruptcy Court's orders. (MB 4th Cir.

Br., No. 17-2268 (4th Cir.), ECF No. 19, at 17; MB 4th Cir. Reply Br., ECF No. 36, at 13.)

---

[4]    Mar-Bow did not appeal the Court's decision to dismiss the appeals of the Plan
confirmation orders as equitably moot in *Mar-Bow I*. It only appealed the order in *Mar-Bow I*
dismissing the appeals of the Rule 2014 disclosure rulings for lack of appellate standing and the
order in *Mar-Bow II* dismissing the appeals of the Fee Application Orders for lack of appellate
standing.

Specifically, Mar-Bow argued that it had standing to appeal, because it sought to protect the integrity of the bankruptcy process. (MB 4th Cir. Br. at 18-20; MB 4th Cir. Reply Br. at 18-23.) Similarly, Mar-Bow claimed that conferring standing upon it would protect the public interest. (MB 4th Cir. Br. at 21-23.) Finally, Mar-Bow again advanced its theory that the structure of the Bankruptcy Code supports appellate standing for all creditors. (MB 4th Cir. Br. at 23-36; MB 4th Cir. Reply Br. at 23.) Notably, Mar-Bow did not argue that it had a pecuniary interest, nor that this Court erred in finding that it lacked a pecuniary interest. Instead, it argued only that it need not have a pecuniary interest to maintain its appeal.[5] (MB 4th Cir. Br. at 17; MB 4th Cir. Reply Br. at 13-14.) Although Mar-Bow advanced the above arguments, it primarily focused its briefs on McKinsey's alleged noncompliant Rule 2014 disclosures, rather than its standing to appeal the Bankruptcy Court's rulings on McKinsey's disclosures.

The Fourth Circuit did not accept any of Mar-Bow's arguments. Instead, the Fourth Circuit summarily affirmed this Court's decisions to dismiss the appeals. The Fourth Circuit dispensed with oral argument and issued an unpublished, per curiam opinion that stated, "[w]e have reviewed the record included on appeal, as well as the parties' briefs, and we find no reversible error. Accordingly, we affirm for the reasons stated by the district court." *In re Alpha Nat. Res., Inc.*, 736 F. App'x. 412, 413 (4th Cir. 2018).

On January 22, 2019, Mar-Bow filed a petition for writ of certiorari (Petition for Writ of Certiorari ("Petition"), No. 18-974 (U.S.)) in the Supreme Court of the United States. It posed the question presented as follows:

---

[5] Mar-Bow further argued that it had Article III standing, but that argument did not address this Court's decision that Mar-Bow lacked appellate standing. Moreover, it does not bear on the instant analysis of whether Mar-Bow has appellate standing to raise these appeals.

[w]hether Article III federal courts may apply the "persons aggrieved" pecuniary-interest test (a judge-made prudential standing doctrine) to preclude judicial review of orders entered by an Article I bankruptcy court when an appellant suffers an inherently non-pecuniary injury that arises from impairment of the bankruptcy process and inaccessibility of court records.

(Petition at i.)

In support of its Petition, Mar-Bow cited non-bankruptcy cases for its argument that federal courts should not apply prudential standing doctrines, such as the "persons aggrieved" test. (Petition at 13.) Mar-Bow noted that the Fourth Circuit continues to apply the "persons aggrieved" test without recognizing any exceptions, like the Fifth and Seventh Circuits. (Petition at 25.) Mar-Bow argued that this created a split with four other circuits that have recognized certain exceptions to the "person aggrieved" test, warranting Supreme Court review. (Petition at 26.) Mar-Bow also claimed that the importance of the question warranted Supreme Court review.[6] (Petition at 31.) On April 22, 2019, three weeks after the parties had completed briefing of the Petition, the Supreme Court denied the Petition.[7] *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs. U.S., LLC*, 139 S. Ct. 1601 (2013) (Mem.).

The above discussion recounts Mar-Bow's *previous* attempts to litigate its allegations that McKinsey did not comply with Rule 2014. Despite the numerous and consistent rejections above, Mar-Bow found another way to raise its same objections — the Rule 60(d) Motion — which forms the subject of this appeal. A review of the procedural history follows.

---

[6] In its "Statement of the Case," Mar-Bow again raised its argument that the Bankruptcy Code provides for creditor appellate standing. (Petition at 3.)

[7] The Court reviews the Petition simply as background to highlight how frequently Mar-Bow has raised these failed arguments in this litigation. However, the Court gives no precedential or preclusive effect to the denial of certiorari. *See Hopfmann v. Connolly*, 471 U.S. 459, 461 (1985) ("Nor did the denial of certiorari have any precedential effect."). Nor will the denial of certiorari factor into the establishment of the law of the case discussed below.

### D.      The Rule 60(d) Motion

#### i.      *Background of the Rule 60(d) Motion*

On June 28, 2018, the Bankruptcy Court entered the Final Order, closing the Bankruptcy

Case after finding that the Estate had been fully administered in accordance with the plan.

(Supp. App. 5-188.) On July 18, 2018, Mar-Bow filed two motions. It filed a Motion to Reopen

the Bankruptcy Case, pursuant to section 350(b) of the Bankruptcy Code, to address additional

alleged disclosure violations by McKinsey, address credible allegations of McKinsey's fraud on

the Court and to grant Mar-Bow's request for an indicative ruling. (Bankr. ECF No. 4122 at 3).

Along with the Motion to Reopen, Mar-Bow filed its original Motion for Relief from Judgments

and For Indicative Ruling (Bankr. ECF No. 4124; App. 2597-2617). Mar-Bow sought relief

from the orders denying Mar-Bow's request for additional disclosures and public disclosures by

McKinsey, approving McKinsey's fee applications and finding that McKinsey fully complied

with Bankruptcy Rule 2014. Mar-Bow specifically identified the Order Compelling

Compliance, Clarification Order, Confidentiality Order, Third Fee Application Order, Final Fee

Application Order, Motion to Dismiss Order, and Motion to Dismiss Opinion as the orders from

which it sought relief. (*Id.*) Mar-Bow claimed that McKinsey's disclosure violations warranted

the relief that it sought. (*Id.*)

On August 9, 2018, Mar-Bow filed an Amended Motion for Relief from Judgments and

for Indicative Ruling, asserting additional facts in support of its motion and requesting that the

Bankruptcy Court permit additional discovery. (Bankr. ECF No. 4128; App. 3298-3325.) The

crux of Mar-Bow's motion was that McKinsey's alleged Rule 2014 disclosure violations

constituted a fraud on the Court. (*Id.*) For relief, Mar-Bow requested "disgorgement of

McKinsey's fees for the benefit of ANR's creditors and any other relief for the creditors that is

necessary and appropriate to address and remedy McKinsey's unlawful and fraudulent conduct." (App. 3321.) Mar-Bow suggested that "[a]ny monetary sanctions that the Court imposes against McKinsey should be distributed to ANR's creditors as the Court may determine." (App. 3304.)

The U.S. Trustee joined the Motion to Reopen, while OLD ANR, LLC (formerly ANR) and its affiliates (collectively, the "Reorganized Debtors") and McKinsey opposed the Motion to Reopen. (App. 137.) Following a hearing, the Bankruptcy Court granted the Motion to Reopen on a limited basis, briefly reopened the Bankruptcy Case to enter certain documents on the docket, and closed the Bankruptcy Case. (*Id.*) The Bankruptcy Court opened a separate miscellaneous proceeding as Case No. 19-302 to serve as the vehicle "to address the legal and factual issues raised in the pleadings identified above," including the Rule 60(d) Motion. (App. 138.)

On January 16, 2019, the Bankruptcy Court appointed United States Bankruptcy Judge Marvin Isgur as a mediator in the global dispute between Mar-Bow and McKinsey in the Bankruptcy Case and two additional pending bankruptcy cases. (*Id.*) Through the mediation, McKinsey and several of its affiliates reached a settlement with the U.S. Trustee. (*Id.*) On April 16, 2019, that settlement received approval during a joint hearing before the Bankruptcy Court, the United States Bankruptcy Court for the Southern District of New York, and the United States Bankruptcy Court for the Southern District of Texas. (App. 138.) The proceeds of the settlement were distributed in accordance with the terms of the Plan. (Bk. Misc. ECF No. 45.) McKinsey and Mar-Bow did not reach an agreement at mediation. (App. 138.)

Before addressing the merits of the Rule 60(d) Motion, the Bankruptcy Court asked the parties to address whether Mar-Bow had standing to request such relief. (App. 138.) Mar-Bow claimed that it had standing as a creditor of the Bankruptcy Case. (App. 7.) Mar-Bow further

claimed that it had a "pecuniary interest for standing purposes," because "a monetary distribution to Mar-Bow is a colorably arguable consequence of McKinsey's frauds on the Court." (App. 8.) Mar-Bow claimed that it sought disgorgement of McKinsey's fees, disgorgement of certain investment profits that Mar-Bow claims resulted from the disclosure violations[8], and that "the disposition of any monetary sanctions that the Court imposes on McKinsey RTS for its abuses of the judicial process is entirely within the Court's discretion." (App. 9.) Mar-Bow further suggested that the Court should order that "all monetary sanctions be distributed broadly to those unsecured creditors on a pro-rata basis." (*Id.*) It offered no authority to support this distribution plan.

### ii.   *The Bankruptcy Court's Denial of the Rule 60(d) Motion*

On April 23, 2019, after entertaining briefing from the parties, the Bankruptcy Court held a hearing on the standing issue. (App. 139.) On May 17, 2019, the Court issued an Order and Memorandum Opinion, denying Mar-Bow's Rule 60(d) Motion for lack of standing. (App. 133-147.)

The Bankruptcy Court first addressed whether Mar-Bow had a right to be heard on the Rule 60(d) Motion under the additional standing requirements in chapter 11 bankruptcy cases, as set forth in § 1109 of the Bankruptcy Code. (App. 140-41.) The Bankruptcy Court recognized that bankruptcy standing requires that a person qualify as a "party in interest," meaning that it "must have a 'pecuniary interest at stake' that would be 'directly affected' by the bankruptcy proceeding.'" (App. 141.) (internal quotations omitted). The Bankruptcy Court noted that this

---

[8]   This request for disgorgement of the investment profits did not specifically appear in Mar-Bow's Rule 60(d) Motion. Instead, Mar-Bow requested disgorgement of McKinsey's fees and other relief that the Court deemed appropriate. The disgorgement of investment profits first appeared in Mar-Bow's brief to the Bankruptcy Court regarding standing.

Court had already held that Mar-Bow had no pecuniary interest in any fees that may be disgorged from McKinsey, and that "[t]he same logic applies when considering any disgorgement of profits or additional monetary sanctions hypothetically ordered by the Court in response to the Rule 60(d) Motion." (App. 142.) Because the order confirming the Plan had *res judicata* effect, any sanctions that the Bankruptcy Court ordered would necessarily flow to "Allowed Secured First Lien Lender Claims," which would not include Mar-Bow. (App. 143.) Therefore, the Bankruptcy Court reasoned, "Mar-Bow has no pecuniary interest at stake in the current proceeding that would qualify it as a party in interest under section 1109(b)." (*Id.*)

The Bankruptcy Court further ruled that Mar-Bow lacked Article III standing with respect to its Rule 60(d) Motion. (App. 143.) Specifically, the Court determined that Mar-Bow had suffered no injury, because it had no legally protected interest in McKinsey's fees, profits or other sanctions. (*Id.*) Because "Mar-Bow's only method of accessing those funds" would require it to "convince this Court to sidestep the terms of the confirmed Plan to bestow the funds upon the unsecured creditors on a pro rata basis," the Bankruptcy Court considered Mar-Bow's interest "far too conjectural to constitute an injury in fact." (App. 143-44.) The Court further found that Mar-Bow could not claim as its injury any undermining of the public's confidence in the integrity of the proceedings, because that injury constituted the sort of generalized grievance that would not confer Article III standing. (App. 144.) And the Bankruptcy Court rejected Mar-Bow's argument that the Court's equitable powers to remedy a fraud on the court conferred standing on a party to prosecute a claim of fraud on the court. (App. 145.) Ultimately, the Court concluded that "Federal Rule 60(d)(3) claims, by their nature, do not exempt a plaintiff from meeting the ordinary standing requirements." (App. 147.) Accordingly, the Bankruptcy Court denied Mar-Bow's Rule 60(d) Motion for lack of standing. (*Id.*)

On May 31, 2019, Mar-Bow filed a Motion to Reconsider the Bankruptcy Court's denial of the Rule 60(d) Motion.  (App. 547-72.)  On July 18, 2019, the Bankruptcy Court issued an Order (BK Misc. ECF 81) and Memorandum Opinion (BK Misc. ECF 80) denying the Motion to Reconsider.  (App. 1234-39.)  The Bankruptcy Court found that Mar-Bow had not met any of the three criteria for reconsideration, specifically because Mar-Bow had not demonstrated an intervening change in law, new evidence not previously available, nor the need to correct a clear error of law to prevent manifest injustice.  (App. 1235.)

Lastly, as part of approving the settlement between McKinsey and the U.S. Trustee, the Bankruptcy Court ordered McKinsey to file a certification that it would not receive any benefit, directly or indirectly, from the distribution of the settlement payment.  On June 13, 2019, McKinsey filed a certification in response to the Bankruptcy Court's order.  (App. 573-88.) Although no other party objected to McKinsey's certification, Mar-Bow requested that the Bankruptcy Court reject the certification.  (App. 589-605.)  McKinsey moved to strike Mar-Bow's request, and Mar-Bow responded.  (App. 619-1233.)  On July 18, 2019, the Bankruptcy Court found that Mar-Bow did not have standing to file its objection.  (App. 1240-43.)  It further determined that, even if Mar-Bow had standing, it would overrule Mar-Bow's objection.  (*Id.*) Therefore, it accepted McKinsey's certification.  Mar-Bow appealed the Certification Order and the other rulings relating to the denial of its Rule 60(d) Motion.

### E.    The Instant Appeal

On July 31, 2019, Mar-Bow noticed an appeal of the Bankruptcy Court's Order and Memorandum Opinion denying the Rule 60(d) Motion, the Order and Memorandum Opinion denying the Motion to Reconsider, and the Certification Order.  (ECF No. 1.)

### i.   *Mar-Bow's Opening Brief*

Mar-Bow presents three issues in its opening brief:

1) Whether the Bankruptcy Court erred in imposing standing criteria to its Rule 60(d) Motion;

2) Whether the Bankruptcy Court erred in considering the merits of Mar-Bow's allegations of fraud on the court; and

3) Whether the Bankruptcy Court erred in accepting McKinsey's certification that it would receive no benefit from the settlement distribution.

(Br. of Appellant ("Mar-Bow Br.") (ECF 20) at 2.)

In claiming that the Bankruptcy Court erred, Mar-Bow argues that it had standing to object to McKinsey's disclosures and never lost it. (Mar-Bow Br. at 13-18.) Primarily, Mar-Bow argues that courts evaluate standing at the commencement of the litigation, such that Mar-Bow's standing as a creditor continued to its Rule 60(d) Motion. (Mar-Bow Br. at 16-18.) Further, Mar-Bow claims that an evaluation of standing at the time of the Rule 60(d) Motion would result in a finding that it had standing, because it had suffered a sufficiently concrete injury in fact. (Mar-Bow Br. at 25.) Specifically, Mar-Bar argues that its pre-confirmation claim remained valid, even if the claim could not be collected from ANR. (Mar-Bow Br. at 26.) Mar-Bow also claims that creditors have an interest in conflict-free fiduciary professionals, and McKinsey's incomplete disclosures harmed that interest. (Mar-Bow Br. at 26-27.) Additionally, Mar-Bow avers that it will assert entitlement to any monetary sanctions imposed on McKinsey. (Mar-Bow Br. at 29.) Finally, Mar-Bow contends that non-parties have standing to litigate fraud on the court. (Mar-Bow Br. at 27.)

With respect to the redressability requirement for Article III standing, Mar-Bow argues that the broad discretion that courts have in fashioning remedies for fraud on the court renders its injury redressable. (Mar-Bow Br. at 34.) Mar-Bow claims that the Bankruptcy Court could

24

distribute sanctions outside of the parameters of the Plan, and that the Bankruptcy Court erred in concluding that it would have to disburse any disgorged money according to the Plan. (Mar-Bow Br. at 37.) Mar-Bow also points to the ability of sanctions to deter McKinsey's conduct in other cases. (Mar-Bow Br. at 36.) Indeed, Mar-Bow claims that the true goal of its litigation "was such deterrence — to end McKinsey's disclosure violations in its next cases." (Mar-Bow Br. at 36.)

Its standing arguments aside, Mar-Bow claims that it need not have standing to vindicate fraud on the court. (Mar-Bow Br. at 39.) According to Mar-Bow, courts have a duty to address fraud on the court allegations, obviating the need for a party to have standing to raise such allegations. (Mar-Bow Br. at 40-41.) Because of this, the Bankruptcy Court should have decided Mar-Bow's allegations on the merits. (Mar-Bow Br. at 42.)

Despite this Court and the Court of Appeals having already found that it lacked appellate standing to appeal the orders from which it sought relief in the Rule 60(d) Motion, Mar-Bow relegated its entire discussion of bankruptcy appellate standing in its opening brief to a single footnote. In that footnote, Mar-Bow claims that the previous "appellate decisions do not control here" and then cites caselaw from beyond the Fourth Circuit for the proposition that a party always has appellate standing to challenge a bankruptcy court's determination that it lacks standing. (Mar-Bow Br. at 5, n.1.) It then claims that its appellate standing arguments are "stronger in the context of fraud on the court" than the ones previously rejected, but it does not elaborate upon nor offer support for this claim. (Mar-Bow Br. at 5, n.1.)

### ii.    *McKinsey's Brief*

In opposing the appeal, McKinsey argues that Mar-Bow lacks a pecuniary interest in the bankruptcy proceedings, as previously determined by this Court and the Fourth Circuit. (Br. of

Appellee ("McKinsey Br.") (ECF No. 21) at 18.)  According to McKinsey, this previous determination constitutes law of the case, defeating both Mar-Bow's bankruptcy appellate standing here and its bankruptcy standing below.  (McKinsey Br. at 21.)  McKinsey claims that Mar-Bow has offered no compelling reason for the Court to reverse its previous determinations on standing.  (McKinsey Br. at 21.)

In response to Mar-Bow's arguments on the merits, McKinsey claims that a party must establish standing at every stage, such that Mar-Bow's standing at the commencement of litigation did not control its standing at the time that it filed the Rule 60(d) Motion.  (McKinsey Br. at 22.)  McKinsey further claims that Mar-Bow lacked Article III standing at the time of the Rule 60(d) Motion, because it suffered no injury-in-fact.  (McKinsey Br. at 30.)  Moreover, McKinsey argues that any party invoking the Court's jurisdiction must establish standing, and fraud on the court allegations provide no exception to that rule.  (McKinsey Br. at 36.)  Finally, McKinsey argues that Mar-Bow lacks standing to challenge the Certification Order and, in any event, the Bankruptcy Court did not err in approving McKinsey's certifications.  (McKinsey Br. at 46.).

### iii.    *Mar-Bow's Reply Brief*

In its reply brief, Mar-Bow argues that law of the case does not apply, because the appellate courts previously dismissed Mar-Bow's appeals on appellate standing grounds, not bankruptcy standing grounds.  (Reply Br. of Appellant ("Mar-Bow Reply Br.") (ECF No. 22) at 2.)  Because appellate standing differs from bankruptcy standing, Mar-Bow argues that the previous rulings have no application here.  (Mar-Bow Reply Br. at 2.)  Additionally, Mar-Bow reiterates that "parties held to lack standing in the bankruptcy court always have appellate standing to appeal that ruling."  (Mar-Bow Reply Br. at 3.)  Further, Mar-Bow argues that

standing and fraud-on-the-court issues provide exceptions to the law of the case doctrine. (Mar-Bow Reply Br. at 4-6.) Mar-Bow further argues that it has appellate standing, because a creditor has standing to appeal any orders regarding any plan that left it with an unpaid balance. (Mar-Bow Reply Br. at 7.) Moreover, argues Mar-Bow, it has appellate standing based on the fact that the Plan would not control disposition of any sanctions. (Mar-Bow Reply Br. at 7.)

Additionally, in response to McKinsey's arguments on the merits of the Bankruptcy Court's decision (rather than bankruptcy appellate standing), Mar-Bow argues that it had standing as a creditor, which imposes no pecuniary interest criteria in the Bankruptcy Court. (Mar-Bow Reply Br. at 7.) Similarly, Mar-Bow argues that jurisdictional standing is determined as of the time of the alleged fraud's occurrence. (Mar-Bow Reply Br. at 12.) Moreover, Mar-Bow has standing as a bound litigant, and because it has a right to conflict-free estate professionals. (Mar-Reply Br. at 18-20.) Further, Mar-Bow argues that the penalties the Bankruptcy Court could impose on McKinsey provide for redress to Mar-Bow's injuries sufficient to confer Article III standing. (Mar-Bow Reply Br. at 22.) Mar-Bow argues that a "judgment against McKinsey — even without a monetary component — would effectively provide declaratory relief deterring ongoing McKinsey misrepresentations to bankruptcy courts." (Reply at 22.) Finally, Mar-Bow claims that the Bankruptcy Court breached its duty in not evaluating its fraud-on-the-court claims. (Reply at. 26.)

The Court heard argument on Mar-Bow's appeal during a conference call on June 25, 2020, and the appeal is now ripe for resolution.

## II.    STANDARD OF REVIEW

"When reviewing a decision of the bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal."

*Paramount Home Entm;t Inc. v. Circuit City Stores, Inc.*, 445 B.R. 521, 526-27 (E.D. Va. 2010). Accordingly, the district court reviews the bankruptcy court's legal conclusions *de novo*, its factual findings for clear error, and any discretionary decisions for abuse of discretion. *Stancill v. Harford Sands Inc. (In re Harford Sands Inc.)*, 372 F.3d 637, 639 (4th Cir. 2004). A finding of fact qualifies as clearly erroneous if a reviewing court, considering all of the evidence, "is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985). In cases involving questions of law and fact, the Court reviews findings of fact under the clearly erroneous standard and reviews *de novo* the legal conclusions derived from those facts. *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996).

### III. ANALYSIS

Bankruptcy proceedings and appeals therefrom involve two distinct types of standing requirements — bankruptcy standing and bankruptcy appellate standing. Bankruptcy standing in the bankruptcy courts derives from the Bankruptcy Code, which provides that "[a] party in interest, including the debtor, the trustee, a creditor's committee, an equity security holder's committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear to be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). However, standing to appeal an order from the bankruptcy court to the district court — bankruptcy appellate standing — has different, and more stringent, requirements.

McKinsey argues that Mar-Bow lacks bankruptcy appellate standing to appeal the Bankruptcy Court's orders. Mar-Bow counters that it does not need appellate standing or, in the alternative, that it can satisfy the test for bankruptcy appellate standing. Therefore, before considering the merits of Mar-Bow's appeal, the Court must first determine whether Mar-Bow

even has standing to bring this appeal. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 n.8 (1986) ("The rules of standing, whether as aspects of the Article III case-or-controversy requirement or as reflections of the prudential considerations defining and limiting the role of the courts, are threshold determinants of the propriety of judicial intervention."). The Court will focus its analysis on Mar-Bow's standing to appeal the denial of its Rule 60(d) Motion, as that drives the analysis.

### A.    Bankruptcy Appellate Standing

Only a party with a financial stake in a bankruptcy court's order has standing to appeal that order. *In re Urban Broad Corp.*, 401 F.3d 236, 243 (4th Cir. 2005). "The test for standing to appeal a bankruptcy court's order to the district court is well-established: the appellant must be a *person aggrieved* by the bankruptcy order." *Id.* Although Congress repealed the section of the Bankruptcy Code that codified the "person aggrieved" test in 1978, courts continue to apply the test. *In re Clark*, 927 F.2d 793, 795 (4th Cir. 1991). Only a party "directly and adversely affected pecuniarily" by the entry of an order constitutes a "person aggrieved" by that order. *In re Urban Broad*, 401 F.3d at 244. A person has no standing to appeal an order when the relief sought would result in "no pecuniary benefit at all" to that party. *Mar-Bow I*, 578 B.R. at 355. To demonstrate such a direct and adverse pecuniary effect of an order, "the appellant must show that the order diminishes its property, increases its burdens, or impairs its rights." *Id.* at 354 (quoting *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 558 (D. Del. 2005)). Thus, an appellant claiming a sufficient pecuniary interest to appeal an order "must show that the bankruptcy court's order directly and adversely affected [its] pecuniary interest." *Parson v. Matson*, 2018 WL 1855964, at *2 (E.D. Va. Apr. 18, 2018).

Bankruptcy appellate standing requires more than the showing required by Article III. "Appellate standing in a bankruptcy case is more limited than Article III standing or the prudential standing requirements associated therewith." *In re AFY*, 734 F.3d 810, 819 (8th Cir. 2013) (quoting *In re Troutman Enters., Inc.*, 286 F.3d 359, 364 (6th Cir. 2002)). This more stringent "person aggrieved" standard "reflect[s] the understandable concern that if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988). The Court previously ruled that Mar-Bow lacked standing to appeal the same orders from which it sought relief in its Rule 60(d) Motion, because it had no pecuniary interest in the outcome of those appeals. The parties dispute the effect of these previous rulings on the present appeal, so the Court will first answer that question.

## B.     Law of the Case

McKinsey claims that the previous determinations control the outcome of this appeal as the law of the case, such that the Court need not analyze the question any further. Mar-Bow contends that the law of the case doctrine does not bar appeals based on standing or fraud on the court, and that Mar-Bow's fraud on the court claim differs substantively from its prior claims that McKinsey's disclosures violated Rule 2014. Further, Mar-Bow contends that parties always have standing to appeal a ruling by the bankruptcy court that it lacks standing. The Court disagrees with both parties and finds that the proper application of the law of the case doctrine lies somewhere in the middle. The doctrine applies to multiple issues presented by this appeal, but it does not completely dispose of it.

Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent states in the same case." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009); *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 68 (4th Cir. 1988) ("Accordingly, when a decision of an appellate court establishes 'the law of the case,' it must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal . . . ."). Unlike *res judicata* or *stare decisis* involving issues of preclusion following a final judgment, the law of the case doctrine "regulates judicial affairs prior to the entry of final judgment." *Hill v. Pitt & Greene Elec. Membership Corp.*, 161 F.3d 2, at *1 (4th Cir. 1998) (Table). In short, previous legal rulings apply in subsequent proceedings. *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 804 F.3d 646, 665-66 (4th Cir. 2015). The doctrine "applies both to questions actually decided as well as to those decided by necessary implication." *Sejman*, 845 F.2d at 69 (internal quotations omitted); *see also CSX Transportation, Inc. v. S.C. Dep't of Revenue*, 959 F.3d 622, 629 (4th Cir. 2020) (summarily rejecting an argument raised by the appellee, because the appellate court had answered the same question in previous appeal).

This prudential doctrine exists, because "[c]learly, courts could not perform their duties satisfactorily and efficiently if a question once considered and decided were to be litigated anew in the same case upon any and every subsequent appeal." *Sejman*, 845 F.2d at 68-69 (quoting *Great Western Tel. Co. v. Burnham*, 162 U.S. 339, 344 (1896)). Moreover, "[p]erpetual litigation of any issue — jurisdiction or nonjurisdictional — delays, and therefore threatens to deny, justice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 n.5 (1988).

The Fourth Circuit has recognized three exceptions to the law of the case doctrine: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since

31

made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly

erroneous and would work manifest injustice." *TFWS, Inc.*, 572 F.3d at 191.  Related to the first

exception, "different facts will lead to a different legal analysis," such that the law of the case

doctrine "poses no bar to the assessment of past holdings based on a different procedural posture

when . . . the later review expands the court's inquiry based on development of actual facts

underlying a plaintiff's claim." *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019) (ruling that

previous rulings based on the facts alleged did not prohibit revisiting those rulings on summary

judgment after development of the record).  The third exception — a clearly erroneous prior

decision — has a particularly limited application.  The Fourth Circuit has advised that "[a] prior

decision does not qualify for this third exception by being just maybe or probably wrong; it must

strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *TFWS, Inc.*, 572

F.3d at 194.  Finally, courts also recognize that "[t]he principle [of law of the case] is not

absolute nor inflexible." *Capital Inv'rs Co. v. Ex'rs of Morrison's Estate*, 584 F.2d 652, 654

(4th Cir. 1978); *see also CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 398 n.1

(4th Cir. 1995) (noting that "the law of the case doctrine is discretionary and not mandatory").

Additionally, the Supreme Court has advised that a "court has the power to revisit prior decisions

of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe

to do so in the absence of extraordinary circumstances . . . ." *Christianson*, 486 U.S. at 817.

Accordingly, to determine the extent to which the law of the case governs the instant

appeal, the Court will conduct a two-fold analysis. *See In re Hoch*, 577 B.R. 202, 211 (Bankr.

E.D.N.C. 2017) (conducting two-step inquiry to determine application of law of the case

doctrine).  First, the Court will assess which questions *Mar-Bow I* and *Mar-Bow II* actually

decided or decided by necessary implication.  Second, the Court will evaluate whether any of the

exceptions exist that justify departing from the law of the case and revisiting one or more issues already decided.

### *i.     The Legal Issues Previously Decided*

In *Mar-Bow I*, the Court dismissed Mar-Bow's appeal of the Bankruptcy Court's orders on Mar-Bow's Rule 2014 Objections, specifically the Order Compelling Compliance, the Clarification Order and the Confidentiality Order. The Bankruptcy Court had rejected Mar-Bow's requests to suspend and disgorge McKinsey's fees and to order McKinsey to make additional public disclosures. In dismissing the appeal, the Court ruled that Mar-Bow lacked a pecuniary interest in having Mar-Bow make additional public disclosures, as Mar-Bow sought through its objections. The Court further ruled that Mar-Bow lacked a pecuniary interest in the disgorgement of McKinsey's fees that would return to the estate, as none of those fees would inure to Mar-Bow under the Plan. In ruling that Mar-Bow lacked bankruptcy appellate standing, the Court rejected all of Mar-Bow's arguments that the "person aggrieved" test should not apply. These arguments included that Mar-Bow had appellate standing merely as a creditor or, alternatively, because it sought to vindicate the public interest and preserve the integrity of the bankruptcy system.

In *Mar-Bow II*, the Court dismissed Mar-Bow's appeals of the Bankruptcy Court's orders approving McKinsey's Fee Applications and granting McKinsey's Motion to Dismiss Mar-Bow's objections. The Bankruptcy Court had ruled that Mar-Bow lacked standing to object to McKinsey's Fee Applications, because it no longer had a pecuniary interest in the outcome of the Final Fee Application. On appeal, this Court again ruled that Mar-Bow lacked bankruptcy appellate standing to appeal the Bankruptcy Court's standing decision, because Mar-Bow would not receive any fees disgorged from McKinsey. In doing so, it rejected Mar-Bow's arguments

that the "person aggrieved" test should not apply to attempted vindications of the public interest or that Mar-Bow enjoyed appellate standing as a creditor regardless of whether it had a pecuniary interest.

The Fourth Circuit affirmed both of this Court's decisions.  In affirming, it rejected Mar-Bow's arguments that the "person aggrieved" test should not apply.  It also rejected Mar-Bow's argument that Mar-Bow had standing that arose from its stated goal of protecting the integrity of the bankruptcy process and preserving the interest of the public.  Finally, it rejected Mar-Bow's argument that its status as a creditor conferred unlimited appellate standing on it.  The Fourth Circuit rejected Mar-Bow's arguments "for the reasons stated by the district court."

Therefore, the Court finds that the following legal issues have been decided (explicitly or implicitly), such that they constitute the law of the case:

1.  Mar-Bow lacks a pecuniary interest in any fees or profits that the Bankruptcy Court may order be disgorged from McKinsey and returned to the Estate[9];

2.  Mar-Bow must satisfy the "person aggrieved" standard to appeal a Bankruptcy Court determination that it lacks standing in the Bankruptcy Court;

3.  Mar-Bow's status as a creditor does not confer standing on it to appeal any order from the Bankruptcy Court.  It still must satisfy the "person aggrieved" standard for each Bankruptcy Court order that it seeks to appeal; and,

4.  Mar-Bow's claimed attempts to vindicate the public interest or preserve the integrity of the bankruptcy proceedings do not confer standing to appeal any order from the Bankruptcy Court.  It must still satisfy the "person aggrieved" standard for each Bankruptcy Court order that it seeks to appeal.

Now the Court must determine whether to depart from these already-decided legal issues.

---

[9]     The Court notes the possibility that McKinsey's disgorged fees and profits could remain outside of the Estate, as Mar-Bow argues.  The Court did not previously rule on whether that possibility created a pecuniary interest for Mar-Bow, so it falls outside of the law of the case. The Court will address that issue below.

### ii.     Potential Exceptions

None of the three exceptions warrant departing from the law of the case and revisiting the above issues. First, Mar-Bow cannot point to "substantially different evidence" that would alter the analysis of any of the four above legal determinations. Although it claims to have uncovered additional facts to support its fraud allegations, those facts go to the merits of Mar-Bow's fraud allegations but do not affect whether Mar-Bow must meet the "person aggrieved" standard and how it may meet that standard. And, although the Bankruptcy orders come before this Court on a different procedural posture than before, the Court has narrowly construed the previous rulings to include only legal issues that would apply across procedural postures. With respect to the second exception to the doctrine, Mar-Bow has not cited any controlling authority contrary to these issues that would satisfy the second exception. Finally, the third exception — a clearly erroneous prior decision — does not apply here either. The Court does not find that it clearly erred in holding Mar-Bow to the well-established standard for bankruptcy appellate standing. Nor did it err in applying that standard, especially given Mar-Bow's failure to argue that it had a pecuniary interest in the outcome of the previous appeals. And, to the extent that the Court may have erred, any error certainly does not "strike [the Court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *TFWS, Inc.*, 572 F.3d at 194. The Fourth Circuit's affirmance of these rulings, along with the Supreme Court's denial of the petition for certiorari, bolsters the Court's finding that it did not previously err in its standing decisions.

### iii.     Mar-Bow's Arguments Against Application of the Law of the Case Doctrine

Mar-Bow first argues that McKinsey's law of the case argument fails, because the previous decisions concerned bankruptcy appellate standing only, and this appeal concerns standing in the bankruptcy court. (Mar-Bow Reply Br. at 2-3.) This argument fails to recognize

that this appeal, like the previous appeals, does concern bankruptcy appellate standing. Notwithstanding Mar-Bow's persistent efforts to wish away the requirements of bankruptcy appellate standing, all appeals from bankruptcy court orders by their very nature concern bankruptcy appellate standing.

Mar-Bow further argues that the law of the case doctrine does not apply to standing decisions. (Mar-Bow Reply Br. at 4-5.) To the extent that such an exception may exist, it does not apply in these circumstances. Mar-Bow cites *American Canoe* for the argument that law of the case never applies to standing decisions. There, the Fourth Circuit held that the district court abused its discretion by not revisiting its decision early in the litigation that the plaintiffs had standing. *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515-16 (4th Cir. 2003). The Fourth Circuit based its decision on the importance of achieving certainty that plaintiffs possess Article III standing to bring suit. *Id.* at 516. Indeed, the cases cited in *American Canoe* for the importance of the correct decision on Article III jurisdiction demonstrate the continuing obligation of a federal court to ensure that it has jurisdiction (even if it previously made that determination), so as not to decide a case over which it lacks jurisdiction. *See id.* (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it."); *Wisconsin Dep't of Corr. v. Schact*, 524 U.S. 381, 389 (1998) ("No party can waive the [subject matter jurisdiction] defect or consent to jurisdiction."); *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 119 (3d Cir. 1997) ("In sum, other courts have recognized the principle that the federal courts' unyielding obligation to uphold statutory and constitutional limitations on jurisdiction should not bend to less important prudential notions of

comity and finality.")). Moreover, the Fourth Circuit also based its decision on the fact that the defendant had presented additional evidence that cut against the plaintiff's standing (similar to the first law of the case exception), such that the district court should have revisited its previous decision that the plaintiffs had standing. *American Canoe*, 326 F.3d at 516.

The Court does not read *American Canoe* as establishing a wholesale exception to the law of the case doctrine for standing decisions that would include decisions that the plaintiffs lacked standing. Rather, *American Canoe* reaffirms a federal court's continuing obligation to ensure that it has subject matter jurisdiction, even if that means revisiting a prior decision that a plaintiff has standing.[10] This case differs from the facts in *American Canoe*, as Mar-Bow has not presented any additional factual material that would affect the analysis of its standing, and it does not implicate the Court revisiting a previous decision that Mar-Bow had standing.

Moreover, the Court need not address Mar-Bow's argument that "fraud on the court is a well-recognized exception to law of the case." (Mar-Bow Reply Br. at 5.) The Court did not previously rule on Mar-Bow's fraud on the court claim, instead ruling that Mar-Bow lacked bankruptcy appellate standing to appeal the orders that Mar-Bow claims were a product of McKinsey's fraud. That decision established as law of the case certain rules with respect to Mar-Bow's standing to appeal orders from the Bankruptcy Court, but it did not establish any law of the case with respect to the elements of Mar-Bow's fraud claim or its standing to appeal the denial of the Rule 60(d) Motion. The Court's previous determination that Mar-Bow lacked standing to prosecute those appeals will not definitively determine whether Mar-Bow has

---

[10]     If anything, the emphasis that these cases place on the standing requirement (albeit in the Article III context) cuts against Mar-Bow's argument that it need not pass the normal test for standing to appeal a bankruptcy order.

standing to prosecute this appeal. The Court will still analyze Mar-Bow's standing to bring this

appeal, but some of the legal issues that inform that analysis have already been decided.

## C.  Mar-Bow's Bankruptcy Appellate Standing to Bring This Appeal

Mar-Bow uses very little space in its lengthy briefs to address bankruptcy appellate

standing, even though McKinsey raises it as its first defense in its opposition briefs and Mar-

Bow bears the burden to establish bankruptcy appellate standing. *See In re Urban Broadcasting*

*Corp.*, 401 F.3d at 244 (defining the standing requirement: "that the appellant show that he has

been directly and adversely affected pecuniarily by the bankruptcy order"). Mar-Bow raises

three undeveloped arguments related to bankruptcy appellate standing: (1) that parties held to

lack standing in the bankruptcy court always have appellate standing to appeal that ruling; (2)

that it has standing to appeal orders regarding the Plan, because the Plan left it with an unpaid

balance; and (3) the Plan does not control fraud on the court sanctions, so it could realize a

pecuniary gain from sanctions on McKinsey. The Court will examine each in turn.

### i.    *Mar-Bow Must Satisfy the "Person Aggrieved" Standard to Appeal the Bankruptcy Court's Order That It Lacks Standing.*

Mar-Bow claims that "parties held to lack standing in the bankruptcy court always have

appellate standing to appeal that ruling." (Mar-Bow Reply Br. at 3; Mar-Bow Br. at 5 n.1.) The

Court disagrees with this argument, and it will hold Mar-Bow to the "person aggrieved" test to

determine whether it has standing to bring this appeal.

First, as discussed above, the Court has already ruled that Mar-Bow must satisfy the

"person aggrieved" test to appeal from Bankruptcy Court rulings that it lacks standing. In *Mar-*

*Bow II*, Mar-Bow appealed rulings from the Bankruptcy Court that it did not have standing to

object to McKinsey's fee applications. Even though Mar-Bow appealed from a standing

decision, the Court saw "no reason to shun the 'person aggrieved standard,'" despite Mar-Bow

urging the Court to decline to hold it to that standard. *Mar-Bow II*, 2017 WL 4414155, at *18. The Fourth Circuit agreed. Thus, as discussed above, it became the law of the case that Mar-Bow must satisfy the "person aggrieved" standard, even if appealing from a Bankruptcy Court order ruling that it lacks standing.

Even if it did not constitute the law of the case, the Court still would hold Mar-Bow to the "person aggrieved" standard. Mar-Bow cites out-of-circuit cases for the proposition that appellate standing does not apply to appeals of standing decisions, but those decisions do not persuade the Court to disregard the normal standard for bankruptcy appellate standing. For example, Mar-Bow cites *In re Global Indus. Techs., Inc.*, 645 F.3d 201 (3d Cir. 2011). (Mar-Bow Reply Br. at 3). There, the Third Circuit explicitly declined to address bankruptcy appellate standing and analyzed only bankruptcy standing. 645 F.3d at 209 n.23. However, in a footnote, the Court noted that in the non-bankruptcy context, parties denied standing have standing to appeal that decision, and that "applying that principle in the bankruptcy context makes intuitive sense." *Id.*

The Court disagrees with the logic of the Third Circuit's footnote. First, in the non-bankruptcy context, a determination that a party lacks standing extinguishes that party's ability to proceed on that claim, such that the party can appeal that decision. *See* 28 U.S.C. § 1292 (granting courts of appeals appellate jurisdiction over final decisions of district court); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.* 460 U.S. 1, 9 (1983) (holding that order that puts litigant "effectively out of court" is final for purposes of appeal). The same does not hold true in the bankruptcy context. Given the myriad of parties and rulings inherent in a complex bankruptcy proceeding, a party can have standing on one issue that affects it, but lack standing on a separate issue that does not. *See In re Combustion Engineering, Inc.*, 391 F.3d

190, 215 (3d Cir. 2005) (discussing bankruptcy appellate standing and stating that "[s]tanding is not dispensed in gross, but rather is determined by the specific claims presented"). A finding that it lacks standing on that one issue does not put it "effectively out of court," because it can still participate in the proceedings that directly affect it. Therefore, the Court finds the Third Circuit's comparison between the two contexts wanting and will not apply it here.

Moreover, the rule that a party could always appeal a bankruptcy court's finding of no standing defeats the purpose of bankruptcy appellate standing — the "particularly acute" need to winnow down the number of bankruptcy appeals. 391 F.3d at 215. Courts continue to apply the "person aggrieved" test, because otherwise "bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988). Mar-Bow proposes an exception to bankruptcy appellate standing: all parties must show a financial interest in an order except for those adjudged not to have an interest in the order. This would upend any winnowing achieved by the "person aggrieved" test and further mire bankruptcy litigation in endless appeals, allowing the exception to consume the rule.

Mar-Bow also cites *In re Thorpe Insulation Co.*, 677 F.3d 869, 884 (9th Cir. 2012), for the same proposition. (Mar-Bow Br. at 5 n.1). The Ninth Circuit cited the footnote from *In re Global Indus. Techs.* without any further analysis. But there, again, the parties did not dispute that the appellant had appellate standing. *Id.* Indeed, the court found that the plan confirmation order that the appellants appealed had a "real world economic impact" on them, affecting their contractual rights, financial interests and litigation rights in court. *Id.* at 887. This case does not support creating an exception to bankruptcy appellate standing for parties that have been held to lack standing.

Likewise, Mar-Bow cites *Travelers Insurance Co. v. H.K. Porter Co., Inc.*, 45 F.3d 737, 741 (3d Cir. 1995), to support the proposition that a party need not have appellate standing to appeal an order denying it standing. (Mar-Bow Reply Br. at 3). A review of that decision reveals no support for Mar-Bow's argument. On the contrary, the Third Circuit held that the appellant lacked bankruptcy appellant standing, because "its interest is too contingent to have been 'directly affected' by the order . . . ." 45 F.3d at 742. The Third Circuit made no mention of an exception to bankruptcy appellate standing for standing decisions and, instead, reinforced the need for the "person aggrieved" doctrine to deny standing to a party who, "even though they may be exposed to some potential harm incident to the bankruptcy court's order, are not 'directly affected' by that order." *Id.* at 741.

Accordingly, as with previous decisions in this case, Mar-Bow must demonstrate that it satisfies the "person aggrieved" standard to prosecute this appeal. The Court will examine the two bases that Mar-Bow claims give it appellate standing. That examination encompasses a review of several of the arguments that Mar-Bow advances for Article III standing to determine if they could satisfy the standard for bankruptcy appellate standing.

> ### ii.     *Mar-Bow's Unpaid Balance Does Not Confer Appellate Standing to Appeal all Orders Regarding the Plan.*

Mar-Bow argues that it "has pecuniary interest appellate standing in any event because plan treatment that leaves a creditor with an unpaid balance adversely affects that creditor 'directly' and financially,' enabling standing to appeal orders regarding the plan." (Mar-Bow Reply Br. at 7.) Mar-Bow does not expand on this argument beyond this lone sentence, but cites *In re DBSD N. Am., Inc.*, 634 F.3d 79 (2d Cir. 2011) as authority supporting this proposition. The Court does not read *In re DBSD* as broadly supporting the proposition that all creditors with an unpaid balance have standing to appeal all orders.

In the *DBSD* bankruptcy proceedings, Sprint held an unliquidated, unsecured claim arising out of a pending lawsuit against a DBSD subsidiary, which the bankruptcy court valued at $2 million for voting purposes. 634 F.3d at 86. Under the proposed plan, existing shareholders of DBSD would receive more than the unsecured creditors, despite having an interest junior to the unsecured creditors. *Id.* The bankruptcy court confirmed the plan over Sprint's objection. *Id.* at 88. The district court affirmed, and Sprint appealed to the Second Circuit. *Id.* The Second Circuit found that Sprint had standing to appeal the bankruptcy court's order confirming the plan. *Id.*

In finding that Sprint had standing, the court applied the "person aggrieved" test, rather than simply relying on Sprint's creditor status. *Id.* at 89. The court noted that pre-confirmation, Sprint had a claim valued at $2 million, but that after confirmation, "Sprint stood to receive property worth less than half (between 4% and 46%) of that amount." *Id.* Accordingly, the order confirming the plan affected Sprint directly and financially, bestowing standing to appeal the confirmation of the plan. *Id.* Sprint appealed "seeking to enlarge its recovery," and, therefore, Sprint had standing. *Id.* at 91.

Mar-Bow's attempt to stretch this holding falls flat. The court analyzed whether Sprint had standing to appeal the order confirming the plan using the normal "person aggrieved" test. That is, whether the challenged order directly and adversely affected Sprint pecuniarily — and it did. The court did not grant Sprint standing to appeal *all* orders, because the plan had left Sprint with an unpaid balance on its claim. It had standing to appeal one order, because that one order directly diminished its claim. Conversely, the Bankruptcy Court's order on Mar-Bow's Rule 60(d) Motion did not directly diminish Mar-Bow's claim.

Moreover, a more limited construction of Mar-Bow's argument[11] would render it inapplicable to this case. Mar-Bow appears to claim that its standing flows from the Plan that left it with an unpaid balance. But the relief that it sought in the Rule 60(d) Motion had nothing to do with the Plan or the unpaid balance. Through its Rule 60(d) Motion, Mar-Bow sought the disgorgement of fees and profits from McKinsey, as well as additional sanctions. In the briefing for the Rule 60(d) Motion and its motion to reopen the bankruptcy case, Mar-Bow expressly disavowed any attempt to enhance its recovery under the Plan through the Rule 60(d) Motion: "Mar-Bow seeks no relief that will affect confirmation of the debtor's plan, the effectiveness of the plan, the distributions to creditors (other than McKinsey) that have been made under the plan, or the Reorganized Debtors' business operations." (App. 3454.) Further divorcing its claims from the Plan, Mar-Bow expressly argues in this appeal that the Plan should not control the disposition of the relief — sanctions against McKinsey — that it seeks. (Mar-Bow Br. at 37-38.) Given that Mar-Bow does not seek to increase its recovery under the Plan, it cannot claim that its diminished recovery under the Plan confers standing upon it.[12]

At bottom, Mar-Bow's argument boils down to its belief that its creditor status entitles it to appeal any order from the Bankruptcy Court, regardless of the financial impact that that order has on it. But, this Court has already ruled that Mar-Bow must demonstrate a direct and adverse

---

[11]    Because Mar-Bow elected not to expand on this argument beyond a single sentence, the Court struggles to discern just how broad of a rule that Mar-Bow suggests.

[12]    Although Mar-Bow does not expressly argue that it enjoys appellate bankruptcy standing as a bound litigant, it does argue that its status as a bound litigant conferred bankruptcy standing on it below. The Court does not need to reach that question, but it does find that this will not suffice for the more stringent bankruptcy appellate standing for similar reasons that its creditor status does not automatically confer bankruptcy appellate standing.

pecuniary effect from an order to appeal. And, this Court sees no reason to stray from that ruling or, more importantly, from the well-established test for bankruptcy appellate standing.

### iii.     *Seeking Sanctions Does Not Automatically Confer Standing on Mar-Bow.*

Mar-Bow also argues that it has bankruptcy appellate standing, because the Bankruptcy Court would have discretion as to how to distribute the sanctions against McKinsey. (Mar-Bow Reply Br. at 7.) Again, Mar-Bow fails to develop this argument, especially because it fails to demonstrate any entitlement to the sanctions. The Court has already ruled that Mar-Bow lacks a pecuniary interest in any sanctions that would flow to the estate. This leaves Mar-Bow with an exceedingly narrow path to demonstrating that it has standing, *i.e.,* a pecuniary interest in sanctions that do not inure to the Estate. Mar-Bow has failed to successfully traverse this path.

Speculation and conjecture do not give rise to bankruptcy appellate standing. The standard for bankruptcy appellate standing requires a *direct* effect on a party's pecuniary interests. *In re Urban Broad. Corp.*, 401 F.3d 236, 244 (4th Cir. 2004). Potential pecuniary harm that requires the completion of several steps does not constitute a direct pecuniary impact. *Opportunity Finance, LLC v. Kelley*, 822 F.3d 451, 458 (8th Cir. 2016) ("Here, however, any potential pecuniary harm to the Lenders is several steps removed and not a 'direct' pecuniary impact.") (*citing Travelers Ins. Co.*, 45 F.3d at 742 (holding that party did not constitute a person aggrieved because it was "at least two steps removed from any possible diminution of its property"), and *Rohm & Hass Tex, Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 208 (5th Cir. 1994) (pecuniary impact must be "real and immediate")); *In re Barnet*, 737 F.3d 238, 243 (2d Cir. 2013) ("Indeed, we have explicitly stated that 'potential harm' from a bankruptcy court order is insufficient to justify appellate standing."). Asking a court to make predictions based on speculation does not demonstrate a direct pecuniary interest. *In re Urban Broad. Corp.*, 401

F.3d at 245 (rejecting argument of pecuniary interest that "could only be based on rank speculation").

This rejection of speculative events to confer bankruptcy appellate standing finds a parallel in the Article III context. Article III requires (1) concrete and particularized injury (though not necessarily financial), (2) that is fairly traceable to the challenged action, and (3) that a court order can redress. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). This requires less of a showing than the person aggrieved test. *See Travelers*, 45 F.3d at 741 ("Notably, the standing requirement in bankruptcy appeals is more restrictive than the case or controversy standing requirement of Article III, which need not be financial and need only be fairly traceable to the alleged illegal action.") (internal quotations omitted). Still, a speculative chain of events can defeat all three prongs of Article III standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (denying standing, because "speculative chain of possibilities" did not establish injury in fact or traceability); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.").

Mar-Bow can only speculate that it — an unsecured creditor — would eventually obtain a portion of the sanctions awarded against McKinsey. It claims that a "monetary distribution to Mar-Bow is a likely consequence of McKinsey's fraud on the court," but gives no support as to why it considers this consequence likely. (Mar-Bow Br. at 29.) Assuming Mar-Bow succeeded on its Rule 60(d) Motion (an assumption the Court will make for this analysis), Mar-Bow would then need to convince the Bankruptcy Court to sidestep the terms of the Plan in distributing the sanctions. Next, Mar-Bow would need to convince the Bankruptcy Court to ignore the Bankruptcy Code's basic system of priority, which places general unsecured creditors low on the

list.[13] *See Czyzewskit v. Jevic Holding Corp.*, 137 S. Ct. 973, 979 (2017) (describing the

Bankruptcy Code's order of priority, "which ordinarily determines the order in which the

bankruptcy court will distribute assets of the estate"). Finally, Mar-Bow would have to convince

the Bankruptcy Court that an unsecured creditor who purchased less than 0.025% of the Debtor's

pre-petition debt should receive a distribution from the sanctions.[14] Mar-Bow has offered

nothing to suggest that this potential outcome is anything more than "rank speculation" in which

the Court will not engage.[15] Indeed, the very nature of Mar-Bow's argument undercuts it. By

relying on the Bankruptcy Court's discretion, Mar-Bow necessarily relies on a decision by the

Bankruptcy Court that has no predictable outcome mandated by the law, rendering any

prediction merely speculative.

In focusing on the Court's authority to address fraud on the court, Mar-Bow conflates

what the Court has the authority to do with what Mar-Bow has standing to do. Of course, the

Court has the inherent authority to remedy a fraud on the court. *Chambers v. NASCO, Inc.*, 501

---

[13]     The Court recognizes that both the Plan and §§ 725-26 of the Bankruptcy Code apply to
the distribution of assets of the estate, and Mar-Bow argues that the sanctions would not belong
to the estate, such that neither would control the disposition of the sanctions. Although the
Bankruptcy Court may have discretion in how it would distribute any sanctions, Mar-Bow would
have to convince the Bankruptcy Court to exercise its discretion without regard to either the Plan
or the Bankruptcy Code. Mar-Bow offers no other convincing guideposts that it would suggest
to the Bankruptcy Court.

[14]     To the extent that Mar-Bow could convince the Bankruptcy Court to award it a portion of
the sanctions as a reward for bringing the fraud to its attention, such a reward would not redress
any injury suffered by Mar-Bow or compensate it for a diminution of its property, increase of its
burdens or impairment of its rights. Put simply, Mar-Bow cannot rely on the possibility of a
future windfall as its basis for standing.

[15]     The Bankruptcy Court cast serious doubt on this possibility in ruling on the Rule 60(d)
Motion. However, the Court need not give any effect to that preliminary finding to determine
that Mar-Bow can only speculate that it may receive funds as a result of prevailing on the Rule
60(d) Motion.

U.S. 32, 44 (1991); *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580-81 (1946); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 332 U.S. 238, 246 (1944). Even a party who lacks standing to prosecute may bring the fraud to the Court's attention and *suggest* that it vacate a prior judgment based on a fraud perpetuated on the court. *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1074 n.1 (2d Cir. 1972). But this does not give every creditor the right to litigate the same claim of fraud on the court if it does not stand to gain financially from a finding of fraud. A creditor must still establish a direct pecuniary interest in the outcome of its Rule 60 motion to appeal its denial. Mar-Bow has not done so.

Mar-Bow also advances policy concerns that requiring a pecuniary interest to appeal fraud-on-the-court issues will lead to fraud on the court going unpunished. The Court remains unconvinced. Indeed, the U.S. Trustee can raise concerns with fraudulent Rule 2014 disclosures. Or, the first-lien holders that would receive any additional assets entering the estate could move to disgorge McKinsey's fees if they suspected fraud. Finally, the Bankruptcy Court has the inherent authority to *sua sponte* remedy a fraud on the court. That all have chosen not to pursue Mar-Bow's fraud allegations does not relieve Mar-Bow of satisfying this Court's standing requirements.

Likewise, Mar-Bow's claimed interest in having sanctions imposed that would punish McKinsey and deter its future violations cannot give rise to bankruptcy appellate standing.[16] (*See* Mar-Bow Br. at 36, Mar-Bow Reply Br. at 21 (arguing that sanctions could deter

---

[16]    Giving Mar-Bow the benefit of the doubt that it does not have more sinister motives, this appears to be Mar-Bow's true interest in this litigation, because even if Mar-Bow succeeded in convincing the Bankruptcy Court to disburse the sanctions on a *pro rata* basis, Mar-Bow's recovery would be *de minimis*, and would likely pale in comparison to the amount that it has spent on legal fees during this litigation.

McKinsey's future conduct).)  Again, borrowing from the less stringent Article III context, the

Supreme Court has rejected the argument that a party has standing because it "will be gratified

by seeing petitioner punished for its infractions and that the punishment will deter the risk of

future harm." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106-07 (1998).  The Court

further explained:

> But although a suitor may derive great joy from the fact that the United States
> Treasury is not cheated, that a wrongdoer gets his just deserts, or that the Nation's
> laws are faithfully enforced, that psychic satisfaction is not an acceptable Article
> III remedy because it does not redress a cognizable Article III injury.

*Id.* at 107.  Mar-Bow's reliance on *Friends of the Earth, Inc. v. Laidlaw Environmental Services*

*(TOC), Inc.*, provides no recourse, as that case states that the possibility of civil penalties can

confer standing if they will deter a future injury suffered by the plaintiff.  528 U.S. 167, 185

(2000).  But Mar-Bow cannot point to a future injury (economic or otherwise) that it likely will

suffer.[17]  Likewise, Mar-Bow does not have a direct pecuniary interest in seeing McKinsey

punished or its future conduct deterred, absent some additional showing of a pecuniary effect in

the future.  Mar-Bow has not made such a showing; therefore, it lacks bankruptcy appellate

standing.

### iv.    *Mar-Bow Lacks Standing to Appeal the Remaining Orders.*

Mar-Bow similarly lacks bankruptcy appellate standing to appeal the other orders.

Because Mar-Bow lacks a pecuniary interest in the denial of its Rule 60(d) Motion, it also lacks a

pecuniary interest in its Motion to Reconsider the denial of its Rule 60(d) Motion.  Mar-Bow did

not raise any standing arguments unique to the Motion to Reconsider, and the Court cannot

---

[17]    Of course, the possibility exists that Mar-Bow will again purchase a sliver of unsecured
debt in a bankruptcy proceeding that has employed McKinsey in an effort to object to its
disclosures, but that will not suffice to confer bankruptcy appellate standing to appeal the instant
orders.

discern any reason why Mar-Bow would have a pecuniary interest in the Motion to Reconsider but not the underlying Order. The Motion to Reconsider merely asked the Bankruptcy Court to reconsider its denial of the Rule 60(d) Motion such that its interest in the outcome in the Motion to Reconsider mirrors its interest in the outcome of the Rule 60(d) Motion. Therefore, any standing to appeal the denial of the Motion to Reconsider necessarily derives from the denial of the Rule 60(d) Motion.

Likewise, the Bankruptcy Court's order accepting McKinsey's certifications did not "aggrieve" Mar-Bow. Mar-Bow would not gain financially from the Bankruptcy Court rejecting McKinsey's certification. Accordingly, Mar-Bow has not demonstrated that the order in any way directly and adversely affected its pecuniary interests. Therefore, Mar-Bow lacks standing to appeal it.

## IV.   CONCLUSION

Through these orders that Mar-Bow appeals, Mar-Bow does not seek to enhance its recovery below, stop the diminution of its property, lift its pecuniary burden or vindicate its rights. Through this appeal, Mar-Bow once again attempts to wish away the requirement that it satisfy the "person aggrieved" standard to appeal an order from the Bankruptcy Court. This Court, the Fourth Circuit and the United States Supreme Court all previously declined to grant that wish. And the Court will not grant it here.

Rather than seeking recompense for any injury that it has suffered or enhance its recovery as a participant in the Plan, Mar-Bow seeks to punish McKinsey for an alleged fraud on the Court and harm McKinsey's business moving forward.[18]  But, this does not give Mar-Bow a

---

[18]     The Court will not wade into the dispute between the two parties, other than to note the substantial amount of judicial resources consumed by the litigation between Mar-Bow and McKinsey. The Bankruptcy Court has devoted a significant amount of time entertaining Mar-

financial stake in the outcome of the orders that it seeks to appeal. And, without that financial stake, Mar-Bow has not been "aggrieved" by the Bankruptcy Court Orders. Therefore, Mar-Bow lacks standing to appeal the Bankruptcy Orders and this appeal must be dismissed.

An appropriate order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Dated: June 25, 2020

---

Bow's objections to McKinsey's Rule 2014 disclosures. Likewise, this Court has entertained multiple appeals. Even properly applying the winnowing principles of standing, it appears that this litigation has still been mired in litigation and appeals by a marginal party indirectly affected by the Rule 2014 disclosures at issue.

This is not to diminish the seriousness of Mar-Bow's allegations or the importance of Rule 2014 disclosures, but the record reveals that the Bankruptcy Court patiently and thoroughly reviewed the Rule 2014 disclosures at issue. Although the Court passes on assessing the credibility of Mar-Bow's allegations, the Court has the utmost confidence that the Bankruptcy Court gave those allegations proper consideration.